May it please the court, I would like to reserve five minutes for rebuttal. I'll try to remind you. Jan, I want to get to the issue of Agent Black's perjurous testimony in this case. The government asserts that it wasn't shown the exhibit prior to trial that is at issue, Agent Black's own handwritten notes. And they were actually the government's own witnesses notes and they listed them in an exhibit that was filed before the trial even started. So it's clear to me that Agent Black, as the author of the notes, not only was aware of them, and the government was aware of them as it was in the government's possession. In this case, the government did have pre-knowledge that Agent Black was going to testify to what he did testify to because in a prior motion to suppress that co-defendants had filed, Agent Black testified substantially the exact same way that he testified at trial. Is your argument that his trial testimony is contradicted by his notes? It is. Then could you give me the specifics? Yes. So on the brief, but just refresh our recollection as to what is the specific point that you contend is a lie? The point I contend is a lie is that he testifies that on November 16, 2009, there was a black male driving a black Chevy Tahoe at the Smugglers Inn on the border of Canada and the United States, that the owner of the Smugglers Inn saw a woman cross from Canada into the United States with a suitcase, allegedly drugs, and that woman got into the black Chevy Tahoe with Washington State license plates and with the black male who was subsequently identified as Malik James, the appellant. What the owner of the Smugglers Inn testified, I'm sorry, the notes that he wrote say that, in fact, the maid that was working at the Smugglers Inn is the person that saw someone cross from Canada into Mexico and not the owner of the Smugglers Inn. It doesn't say that, does it? It says, quote, housekeeper saw black lady. Then there's another line, and it says put luggage into Tahoe. Well, it was subsequently identified that the black lady was, that the, well, it says housekeeper. So this is concerning the No, but you're saying that's the only, because he put that as affirmative information, that that excludes all other possibilities. I don't see how you can assert that. Well, the thing that's also important is that we don't even get to the impeachment of these notes because what Black testified to at trial was that these notes were for a November 10th incident. When you showed him an undated second page of the notes that didn't have any date on it, right? When the attorney, the trial attorney did press. That's correct. That was an arguably kind of sharp practice, was it not, on the part of the attorney? Well, I would allege it was ineffective because he should have shown Black both pages of the notes instead of one page. If he had shown Black both pages, then Black would have realized he made a mistake. Well, I don't think it's a mistake. Why would, if he saw the one that had the date, then you think he still would have persisted in his alternative date? No, I don't think he would have. He would have been impeached. Well, impeached or he would have said, oh, I see now that that was a different date. But because the attorney only shows him this snippet that doesn't have the date, he's given no context, no clue, and he makes a mistake, which you allege is perjury. But I don't see how it's anything other than a dubious practice by trial counsel. Well, what I'm alleging is why it's not a mistake is that he did the same mistake at the motion to suppress, which contradicts what the owner said. And two, there is specific information. Remember, these are his notes. These are not, you know, he's not being, his memory is not being refreshed by someone else's report. These are his own notes, and it says specifically a Tahoe. And we know that on November 10th, Nassar Hussein crossed into and stayed at the Smuggler's Inn in a car that was a Corsica with Canadian license plates. And there was a great deal of testimony, both from Agent Black and from Boulay, the owner of the Smuggler's Inn, about how the license plate was from Washington State and the person wrote down the license plate number wrong. So because it says Tahoe, I think that is enough specificity, given that he's the writer of the note and given his prior testimony, that this isn't a mistake. That's the key to this case. It's that you wrote the note. You know that there was a Corsica involving a Canadian citizen on November 10th that was white, that doesn't look anything like a black male. And there's an incident on November 16th involving a Chevy Tahoe, black, totally different vehicle, totally different race, totally different nationality of person. So it's not so easy to call it a mistake when you look at the two dates and the differences. If reasonable minds could disagree as to whether or not it was a mistake, then your point disappears, right? It's only if it's clear that it was perjury that your point has any force, right? Well, I'm not conceding that. I don't see how I can concede that point. I don't think it is a mistake. Why not? I mean, in other words, if you didn't know, if reasonable people could say, well, it might have been a mistake based on all these things or it might have been perjury, we don't know. So that becomes a jury issue. But there's no obligation on the government then to do anything. They're not sponsoring perjurious testimony. Their agent made a mistake. But then he made the exact same mistake favorable to the government months apart under oath at two different hearings. That is too fortuitous and coincidental to be a mistake. Well, that's your argument. If it is clearly not just a mistake, then you may have an argument. But if it is, if one could reasonably believe it was a mistake, then you don't have the point, is my point. I understand your point, Your Honor. I'm just saying that given the excellence of U.S. attorneys, the fact that this was a very highly, very strongly contested litigated case, to have the agent, and it's his own notes again, testify twice to the same, quote, mistake, I can't find to be coincidental. I don't. Particularly when the truth, as to what was in his notes, just contradicts the person who owns the smugglers in. And the other reason that this information is prejudicial and the government has said that, oh, this is an immaterial issue because it's a side ancillary issue. All the other evidence is circumstantial. This directly puts my client at the Canadian-U.S. border, directly implicates him into smuggling himself, not by pulling strings from behind the scenes or being a co-conspirator that doesn't actually smuggle drugs. This testimony actually says he's at the border, he's helping someone with a suitcase get into his truck. Did Mr. Boulle, is that how it's pronounced? Boulle, I believe. Okay. Testify that he saw James leave the hotel on that day with someone and that he did see someone outside and that person got into James' car. He testified that he saw James leave. He saw James leave with someone. He did not testify that he saw anyone cross into the border with a suitcase and he did not testify that he saw anyone get into the vehicle with a suitcase. The tech records that the government produced also showed that James entered the United States on November 13th with two females and he left on the 16th with the exact same two females. So the fact that he was seen getting into a truck with a female is not inconsistent. Was this argument made to the district court? The argument I'm making? Yes, this due process. It was not. Counsel, I was just going to suggest that you indicated you might want to keep five minutes for rebuttal, but you haven't covered all the issues that are covered well in your briefing. Did you want to mention before your rebuttal any other issues? The other issue I would like to mention is the issue of the vouching by the trial court for the cooperating individual, Nassar Hussein, and that's the person that I'm talking about who did cross in on November 10th  The government in its brief to this court misinterpreted my argument and acted as if I was saying the prosecutor vouched for Nassar Hussein. I'm not arguing that at all. I'm arguing the exact same thing that trial counsel argued, which is that Nassar Hussein made a statement and it's on direct examination. It's up to the judge statement or something like that. And she ratifies the judge as being the very judge there, yes? Yes. I mean, the case law is clear, first of all, in vouching cases that you're not even supposed to mention the plea agreement and truthfulness until he's been attacked. Isn't the issue on that one whether that reference meant it's up to the judge to tell if I'm telling the truth? Well, what happened is that... Up to the judge to sentence me. Well, the judge made a mistake and that's clear if you look at the record because Nassar Hussein actually uses the words to tell the truth. And then what the judge did is because the trial is contemporaneously being transcribed, is he looks over at his computer and he reads back into the record what he thinks that Hussein said. But when you look at the final transcript that's approved, the final transcript that's in front of this court, the judge's reading during trial of what the witness said was incorrect. The judge incorrectly thinks that the... did not identify that the witness said, tell the truth. The critical words, tell the truth, were omitted from the contemporaneous transcript. And that's because the typist is obviously typing as things are said and it's going along and later she has the chance to correct it with the sound recording and that's why there's a final transcript prepared that corrects mistakes like this. So the judge looks over at the screen and doesn't see the words tell the truth, assumes that the witness is talking about sentencing, says that's already covered by my instructions, there's not an issue, move on. But in fact, why isn't the judge right in the interpretation that he gave? The question was, question, did the government make any promises or guarantee what you would get for your cooperation, meaning the sentence, right? And the answer is, there's no promise, no guarantee, but my lawyer says, if you can tell the truth, you know, the judge will decide. Meaning, the judge will decide the sentence based on whether or not you were telling the truth. Well, Your Honor, I'm just going off... I'm just going off basic grammar, that is, the judge will decide is basically a clause, it's describing the preceding clause, it says, if you tell the truth... It's a question of context. I understand that, Your Honor, but there's... Prior to that, there's no... The question didn't... doesn't even contain the word sentence in it. The question says, did the government make any promises or guarantee what you would get? So the word sentence isn't even in there. But what other meaning is there to what you would get than the sentence? That clearly implies what he's going to get, what he's going to be sentenced to, but he's saying, if I tell the truth, I'm supposed to tell the truth and then my sentence is going to be judged accordingly. But the problem is, is maybe because he's not an English-speaking person, he says, the judge will decide. If you can tell the truth, the judge will decide. And I think the jury could well have understood that the meaning of that is the judge will decide the sentence based on your telling... if you tell the truth. And... but if there were... if there was any ambiguity, the court properly apprised the jury of how they should view it by saying he was talking about the sentence. But he didn't do that. He did not... the judge did not do that. The judge did not give a contemporaneous limiting... Well, he overruled the objection, stating, quote, he was talking about the sentence. He did, but unlike other cases where this court has held that if there's bolstering or vouching, general instructions at the end of a trial are not enough. There has to be either a specific curative instruction or a contemporaneous comment to the jury saying, when Mr. Hussain just said that the judge will decide, that means the sentence and not the truth. And that wasn't done. The defense attorney asked for that, and he didn't do that. Counselor, your time's technically up. We engaged you with our questions quite a bit, so I'm going to add two minutes to your time for rebuttal after we hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, again, my name is Lisa Borczewski, and I appear on behalf of the United States. To pick up on, I guess, the dialogue that was just occurring with respect to this vouching issue and Mr. Hussain's testimony, I think it's important in looking at the context when the transcript is read, with respect to Mr. Hussain's statement, if you can tell the truth, you know the judge will decide. Also important is the follow-up question by the prosecutor. In addressing what that decision is, the prosecutor said, so who is the person that ultimately makes the decision about what your sentence will be? Not the truth of what your testimony is, but what your sentence will be. So any ambiguity was even further clarified by the follow-up question. Did the jury know it was the same judge? I mean, the jury must have known. Judge Martinez's name is on a placard in front of him. The witness said Judge Martinez, so I would guess. So isn't that a problem? Yeah. It's not a problem in that, Your Honor, that determination, that truthfulness determination had yet to occur, because Mr. Hussain had not been sentenced. And the jury was given no information that the judge had speculated on Mr. Hussain's truthfulness, or that his sentence had been imposed. That was yet to occur. So there simply had been no. No, but there was a real motive. It was establishing a motivation for him to tell the truth, because that judge was going to be, because his sentence was in the hands of that judge. It seems to me that's a problem. It's not a problem with respect to the court having vouched for his truthfulness, which is really the issue. What the defendant's motivation was to testify, he is explaining to the jury, and there is certainly no problem with that. The problem would be if the court then put, as defense counsel highlighted, its own impreteur of truthfulness on the testimony that was heard. It's the prosecutor who's doing it. The prosecutor did not ask the question, are you telling the truth, will you tell the truth? The prosecutor simply asked, what benefits will you receive? In bringing out, in the prosecutor's, in effect, bringing out that it's the very same judge who is the judge there, doesn't that create the danger that the jury will think, well, this defendant wouldn't lie in front of this judge who's right there conducting the proceedings. So they're in effect seeking to cloak the testimony with the credibility of the judge, are they not? I don't believe so, Your Honor, because the witness's motivation is not dependent on simply what this judge is That is something that will happen down the road, and that determination by the judge will be made down the road. That judge, as he is listening to the witness's testimony, is not expressing an opinion to the jury, which is really the fundamental key. Is that judge expressing an opinion with respect to the truthfulness or non-truthfulness of this testimony, which the judge simply did not do? And defense counsel made the point that trial counsel asked for a curative instruction during the trial, and that absolutely did not occur. The remedy that was requested by trial counsel was that the entire testimony be stricken. Trial counsel did not ask for a curative instruction, and that certainly was well within the province of trial strategy in that perhaps trial counsel did not want to highlight that they were concerned about this testimony. And in fact, the motion to strike the entirety of the testimony was made outside the presence of the jury. Well, just let me ask you this. With respect to the issue of the prosecutor vouching, which is an issue in the case, why did the prosecutor want the jury to know that Judge Martinez was the one who was going to be doing the sentencing? The question was not so much the response. That was the direct question. Who's going to ultimately decide about what your sentence will be, which means, i.e., whether you're telling the truth, whether you've told the truth? And I would submit, Your Honor, the question, since I was the one that asked it, was to clarify the issue that counsel has addressed with respect to truthfulness. The government was attempting to confirm, so who will decide what your sentence will be? Not the truthfulness of your testimony, but what your sentence will be. Not the prosecutor, not the jury, not anyone else, but the judge. And there was, as illustrated, Mr. Hussein was not English as a first language, but he was speaking in English, and at times his testimony lost something perhaps in the translation of either the question or the answer. And the government wanted to be sure that we were addressing the sentence, and the government was not in control of his sentence. Let me ask you a different question. In the foie d'oeil, you have this extended foie d'oeil question that grows out of your personal experience. I mean, suggesting that to the prospective juror, is it not that, well, if I undertook this kind of thing, or the office that I was previously part of undertook this thing, it must be okay. Wasn't that the real thrust by injecting so much of your personal experience into it? Wasn't that the effect? I don't, certainly I do not believe, since I asked the question, it was not the intent, and I believe the record reflects it was not the effect. The intent, I'm sorry. Why not? I mean, it's a little different to say, you know, what do you think about cooperators? What do you think about sting operations? But that's not how you did it. You said, we had a, I used to be a state prosecutor over in Pierce County. We had an interesting little sting operation that happened when I was there. The courts were so overwhelmed. There were so many people with outstanding restaurant. You're giving a hundred reasons why you think this was legit, and then you, and it goes on at great length, and then you say, what do you think about that? Wasn't that really a way of saying, gee, I'm a nice person, and I did this, and if we have something like this in this case, it's okay, isn't it? Isn't that the real effect of that? It wasn't the real effect, Your Honor, and I think the very last sentence before the question was asked of what do you think about that, the last sentence was, this was a complete lie. This was a sting. This was a scheme. Do you think that's fair? And I think, interestingly, Your Honor, the whole point of this being, it is fair. Law enforcement can do that. The jury has specifically instructed that law enforcement can do that. So this wasn't a situation of the government saying, all law enforcement officers are truthful. I've been a prosecutor for 18 years, and I've never seen a witness lie, never seen a law enforcement officer lie. Certainly a problem. There was no impact or reference to the truthfulness of officers. It was simply, this is the conduct they engaged in, and I agree they lied. I agree it was a sting. It was a scam. What do you think? I thought the thrust of the question from Judge Rakoff was that you could have brought up the same point without inserting yourself in it. I could have said it was not, I'm not familiar with this from my experience as a Pierce County prosecutor, and I inserted that simply as context for my familiarity and knowledge of the scheme. I have another question about the voir dire, because I wondered about the references to John Gotti. This is not a mafia trial. What was the whole point of making the references to, like, a famous godfather in a very notorious trial in the voir dire? This is a trial that many jurors and people in the public at large are familiar with. They're familiar with the names. They're familiar with the participants involved, and so as opposed to When you say this is, you mean your case or the John Gotti case? The John Gotti case. The John Gotti case. It's not an abstract theoretical question that the government is hypothesizing about that certainly lends itself to claim that we're asking a specific question about the facts of the case in our trial. It's a real-world example. It's a real-world example of what do you think about law enforcement or the government using informants, and are you going to hold that against the government? Okay, but the informant in the John Gotti case was Sammy Gravano. Yes. You know, it killed, like, more people than we could probably count, right? So isn't that, like, somewhat inflammatory, you know, with the jury trying Mr. James? I mean, you're not suggesting that he's like John Gotti, right? No, and I believe, Your Honors, the government would submit there was no reference in the record that there were gangs or mafia or somehow Mr. James was related to mafia conduct on the East Coast. But in other words, this is a totally different case from the Gotti case, and really it's arguably an inapt analogy because the point you're making is that for someone as extremely bad as John Gotti, the government might have to use someone as extremely bad as Sammy the Bull, as we call him in New York. But what does that have to do with this case? It's not a fair way of ferreting out what the attitudes would be of a juror in a much more modest case involving a single murder where the cooperator is a different kind of person. It's a different kind of situation altogether. It is a different kind of situation, and frequently if the government provides an example that closely tailors what the facts are in the case at bar, the accusation is looking for a predetermination of whether these jurors are disposed to the particular facts of the case. And for that reason, the government definitely shies away from that. As close as the government got in this case was here was this real-world example. It has no relation to the defendant, not by geography, not in time frame, not in conduct. And the only question the government asked following up was, does it make a difference as to what crime the informant has been convicted of? And in fact, three potential jurors, to appropriately ferret out bias or prejudice, three jurors said, doesn't matter. If it's a drug crime, if it's any other crime, I just don't like the idea. And that was what the government was attempting to determine. Your Honor, I see I have a little over two minutes remaining. Are there any follow-up questions, or if the government would submit on its briefing on other remaining issues? We've reviewed your briefs. I don't have questions to deal with. Judge Schroeder? Hearing no questions. We thank you for your argument. Thank you. Thank you for the additional time, Your Honor. The one thing I would like to clear up is, no, the defense attorney did not ask for a curative instruction. I was incorrect on that. What he did ask was to strike the testimony. But it's clear that the judge, when the judge is reading back what Hussein Nassar had just testified to, misreads what he actually said and misses the tell the truth part. And the next thing is, is that this court in U.S. v. Wallace stated that it's improper vouching for a government to ask a witness on direct examination whether that witness was required to tell the truth as part of a plea agreement. And it's important to note here that the government got itself into this mess because Nassar Hussein's testimony, obviously being direct examination, had not yet been attacked by defense counsel. This was a proactive move by the government to get into something that this court under U.S. v. Wallace has already said is improper. So whether it was about the sentence or the truthfulness or whatever about the plea agreement, when the prosecutor says I was responding to something from the defense, it was direct examination. The defense hadn't touched the witness yet. So there's no way that that was a response. In your rebuttal, do you want to comment at all on the voir dire issues of the John Gotti story or the Tacoma Dome? I think the Tacoma Dome story is exactly what, it's to personalize the prosecutor. It's to make the jury think this prosecutor is prosecuting a guilty person. It was completely unnecessary to go into the point. And the Gotti and Sammy the Bull Gravano, who's killing 17 people in a little drug smuggling case where there's no guns, no violence, no gang thing, is completely prejudicial. And I would say that under Mock, this court's prior case in Mock v. Stewart, that it's actually a structural error that infected the entire trial. Because in Mock, which was a habeas case, at voir dire there was a social worker that infected the whole jury with comments about child sex cases. And what the circuit said is you can't go back, you know, that infected the entire trial process. They divided Ervin v. Dowd, the Supreme Court opinion. So here you have charges of possessing XC, possessing it with intent to distribute. Were there any charges of violent crimes? Absolutely none. This was all drug charges. It was all possession and importation charges. There was no testimony about any gangs, any violence, any guns, anything at all. Well, I'm afraid you're over your extended time, so we should bring this to a close. Thank you, Your Honor. We thank both the appellant and the appellee's counsel for their strong and helpful arguments. So the case of James, United States v. James, shall be submitted to the Supreme Court.
judges: Rakoff, Schroeder, Gould